CITY LIGHTING PRODUCTS
COMPANY, Appellant

v.

THE CARNEGIE INSTITUTE, Owner
or Reputed Owner of the Carnegie
Science Center, Appellee.

Superior Court of Pennsylvania.

Submitted Nov. 12, 2002.

Filed Feb. 5, 2003.

Christopher P. Smith, Pittsburgh, for appellant.

Edward B. Gentilcore, Pittsburgh, for appellee:

Before: LALLY–GREEN, TODD and POPOVICH, JJ.

POPOVICH, J.

¶ 1 Appellant City Lighting Products Company appeals from the order entered on May 22, 2002, in the Court of Common Pleas of Allegheny County, granting Appellee Carnegie Institute's Preliminary Objections to Appellant's Mechanics' Lien Claim. Upon review, we affirm.

¶ 2 The relevant facts and procedural history of this case are as follows. Appellant, a subcontractor, entered into a contract with AMG Acquisition Company (AMG) for electrical supplies for, in and about the construction of twenty-one, twelve-foot high illuminated letters erected to serve as a sign spelling out the words "CARNEGIE SCIENCE CENTER." This sign was placed atop the Carnegie Science Center (the property), owned by Appellee.

¶ 3 Appellant provided materials for the sign for a period beginning May 15, 2001, and ending on September 11, 2001. Evidently, Appellant was not paid by AMG upon completion of the contract. Appellant claimed that it was owed $113,003.66. On November 20, 2001, Appellant presented Appellee with formal Notice of its intention to file a Mechanics' Lien Claim on the property for the amount due Appellant under its contract with AMG, plus interest, penalties, attorneys' fees, costs and expenses.

¶ 4 Appellant filed the Mechanics' Lien Claim on January 10, 2002. Thereafter, on April 15, 2002, Appellee filed Preliminary Objections to the Mechanics' Lien Claim. Appellant filed its response to Appellee's Preliminary Objections on May 16, 2002. Thereafter, on May 22, 2002, the trial court heard oral argument on the Preliminary Objections. On that same date, the trial court granted Appellee's Preliminary Objections, striking the Mechanics' Lien Claim with prejudice. Following the grant of Appellee's Preliminary Objections, Appellant filed a timely Notice of Appeal to this Court.

¶ 5 The sole issue Appellant presents on appeal to this Court is whether the trial court erred in granting Appellee's Preliminary Objections.

¶ 6 Our standard of review from an appeal from the grant of preliminary objections is as follows:

In determining whether the trial court properly sustained preliminary objections, the appellate court must examine the averments in the complaint, together with the documents and exhibits attached thereto, in order to evaluate the sufficiency of the facts averred. The impetus of our inquiry is to determine the legal sufficiency of the complaint and whether the pleading would permit recovery if ultimately proven. This Court will reverse the trial court's decision regarding preliminary objections only where there has been an error of law or abuse of discretion. When sustaining the trial court's ruling will result in the denial of claim or a dismissal of suit, preliminary objections will be sustained only where the case is free and clear of doubt.

*Clemleddy Constr., Inc. v. Yorston,* 2002 PA Super 342, at ¶ 5, 810 A.2d 693 (citations and quotations omitted).

¶ 7 We begin with the observation that in order to effectuate a valid Mechanics' Lien Claim the claimant must comply strictly with the notice requirements of the

Mechanics' Lien Law. *Clemleddy*, 2002 PA Super 342, at ¶ 7, 810 A.2d 693.

¶ 8 Title 49 P.S. § 1501 of the Mechanics' Lien Law sets forth the preliminary notice requirements for subcontractors who intend to file a lien claim. Title 49 P.S. § 1501 states, in pertinent part:

(a) Preliminary notice in case of alteration and repair. No claim by a subcontractor for alterations or repairs shall be valid unless in addition to the formal notice required by subsection (b) of this section, he shall have given to the owner, on or before the date of completion of his work, a written preliminary notice of his intention to file a claim if the amount due or to become due is not paid. The notice need set forth only the name of the subcontractor, the contractor, a general description of the property against which the claim is to be filed, the amount then due or to become due, and a statement of intention to file a claim therefor.

(b) Formal notice in all cases by subcontractor. No claim by subcontractor, whether for erection or construction or for alteration or repairs, shall be valid, unless at least thirty (30) days before same is filed, he shall have given to the owner a formal written notice of his intention to file a claim, except that such notice shall not be required where the claim is filed pursuant to a rule to do so as provided by section 506.

■ ¶ 9 In the present case, the record indicates that Appellant did not provide notice to Appellee of its intent to file a Mechanics' Lien Claim until after work was completed on the sign.[1] Accordingly,

the validity of Appellant's Mechanics' Lien Claim turns on the question of whether the sign constitutes an "erection or construction of an improvement" or an "alteration or repair of an existing improvement." As the Mechanics' Lien Law states, an "erection or construction of an improvement" does not require a plaintiff to give notice to a defendant before completion of the project. *See* 49 P.S. § 1501. However, where the project constitutes an "alteration or repair of an existing improvement," then a plaintiff is required to inform the defendant of its intent to pursue a Mechanics' Lien *before* work on the project was completed. *See* 49 P.S. § 1501.

¶ 10 Title 49 P.S. § 1201(1) defines "improvement" as follows:

**"Improvement"** includes any building, structure or other improvement of whatsoever kind or character erected or constructed on land, together with the fixtures and other personal property used in fitting up and equipping the same for the purpose for which it is intended.

Title 49 P.S. § 1201(10) defines "erection and construction" as follows:

**"Erection and construction"** means the erection and construction of a new improvement or of a substantial addition to an existing improvement or any adaptation of an existing improvement rendering the same fit for a new or distinct use and effecting material change in the interior or exterior thereof.

Title 49 P.S. § 1201(11) defines "alteration and repair" as follows:

**"Alteration and repair"** means any alteration or repair of an existing im-

---

1. The record reveals that Appellant completed work on the sign on September 11, 2001, and gave notice of its intent to file a Mechanics' Lien claim to Appellee on November 20, 2001.

provement which does not constitute erection or construction as defined herein.

¶ 11 Appellant presents two arguments that the sign comprises an "erection and construction" on Appellee's property. First, Appellant argues that the erection of the sign on Appellee's property has adapted Appellee's property for a "new and distinct purpose," *i.e.,* as an "identifiable landmark in the City of Pittsburgh," and, second, the addition of the sign has "materially changed" the exterior of Appellee's property. *See* Appellant's brief, at 10. We disagree. At the outset, we note that Appellee's property, the Carnegie Science Center, has been an "identifiable landmark in the City of Pittsburgh" since its completion in 1989. Accordingly, the placing of the sign atop the property merely served to add to that status and did not create a "new and distinct purpose" for the building.

¶ 12 Although the placing of the sign atop Appellee's property has changed the exterior of the property, we do not find that this change qualifies as an "erection or construction of an improvement" as defined by 49 P.S. § 1201. This conclusion is supported by our holding in *Dollar Bank, FSB v. EM2 Dev. Corp.,* 716 A.2d 671 (Pa.Super.1998). In *Dollar Bank,* this Court concluded that the installation of sewer lines, placing fill, and building an end wall to contain water flow and ensure the stability of the soil, absent a continuous plan to erect a structure, did not qualify as "erection or construction of an improvement." *Dollar Bank,* 716 A.2d at 674. When we apply *Dollar Bank* to the present case, it is clear that the sign was not erected as a part of a continuous plan to erect a structure but rather as an alteration of the presently existing structure.

¶ 13 The present case is analogous to a trial court decision that analyzed whether improvements to a building constituted an "erection and construction" or an "alteration and repair of an existing improvement." In *Joyce v. Sarnelli,* 29 Pa. D. & C.3d 544 (C.P. Westmoreland 1984), Joyce filed a mechanics' lien claim against Weber due to Weber's failure to pay for the installation and sale of supermarket equipment, including refrigeration equipment, shelving, check-out stands, walk-in coolers, gondolas, frozen food cases, compressors and produce cases. *Joyce,* 29 Pa. D. & C.3d at 545. Weber filed preliminary objections, claiming that the equipment was not an "improvement" as defined by the Mechanics' Lien Law. *Id.,* 29 Pa. D. & C.3d at 545. The Court of Common Pleas of Westmoreland County agreed with Weber, finding that the equipment was not an "improvement" under the definition of the Mechanics' Lien Law because the equipment or fixtures were not of a permanent character that would pass as a part of the freehold estate. *Id.,* 29 Pa. D. & C.3d at 547 (citing *Randall Building and Loan Assn., v. Manayunk Realty Co.,* 260 Pa. 421, 103 A. 830 (1918)). The court held that the equipment and fixtures in question were types commonly installed in food markets, and although much of the equipment was large, removal from one food market to another would be achieved by simply disconnecting electrical or plumbing connections. *Id.,* 29 Pa. D. & C.3d at 547.

¶ 14 In the present case, it is clear that a subsequent purchaser of Appellee's property would be able to remove the sign by simply detaching it from the main structure of the building. Therefore, there is no indication that the sign would necessarily pass as part of the freehold estate. Accordingly, we are unable to conclude

that the addition of the sign to Appellee's property affects a permanent improvement to the estate for it to qualify as an "erection or construction" under the Mechanics' Lien Law. Further, the sign is neither necessary for the building's use as a science center, nor does it render the building fit for a new or different use. As such, we conclude that the addition of the sign was an "alteration and repair of an existing improvement (the Carnegie Science Center)," and Appellant was required to give preliminary notice of his Mechanics' Lien Claim against Appellee prior to completion of work on the sign. *See* 49 P.S. § 1501. Accordingly, we are satisfied that the trial court did not err when it sustained Appellee's Preliminary Objections.

¶ 15 As we have dismissed Appellant's sole claim, we affirm the order of the trial court.

¶ 16 Order affirmed.